IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMY M. F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22-CV-173-JFJ |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Amy M. F. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability benefits under Title II of Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician;

the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th

Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 34-year-old female, applied for Title II disability insurance benefits on July 21, 2016, alleging a disability onset date of February 24, 2016. R. 11, 143, 414. Plaintiff claimed she was unable to work due to conditions including constant neck pain; lower back pain; numbness in left arm; right leg pain; constant headaches, almost daily; vision problems in right eye; and concentration problems. R. 443. Plaintiff's claim for benefits was denied initially on October 11, 2016, on reconsideration on May 16, 2017, and by an Administrative Law Judge ("ALJ") on October 17, 2018, after a hearing. R. 55-85, 110-139, 143-156. Plaintiff appealed, and the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for a new hearing, additional evidence, and a new decision. R. 163-167. On remand, a different ALJ held a second hearing by telephone on August 18, 2021. R. 86-109. On September 3, 2021, the ALJ issued a new decision, again finding Plaintiff not disabled. R. 10-23. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

In the second decision, the ALJ found that Plaintiff's date last insured was December 31, 2021. R. 13. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity

during the period from her alleged onset date of February 24, 2016, through March 31, 2016, but did not engage in substantial gainful activity between April 1, 2016, and December 31, 2021. R. 13-14.  At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease, status post cataract surgery to the bilateral eyes with posterior chamber intraocular lens implantation with residuals, status post retinal detachment surgery to the left eye with residuals, status post glaucoma surgery to the right eye with residuals, and amblyopia to the left eye.  R. 14.  The ALJ found Plaintiff's tension headaches and migraines to be non-severe.  R. 14-15.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 15.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded Plaintiff had the RFC to perform a range of light work as follows:

> The claimant is able to lift no more than twenty pounds occasionally and ten pounds frequently.  The claimant is able to sit for six hours in an eight-hour day.  The claimant is able to stand and/or walk for six hours in an eight-hour day.  The claimant can occasionally climb ramp or stairs.  The claimant can occasionally balance, stoop, kneel, crouch, or crawl.  The claimant is unable to climb ladders, ropes, or scaffolding.  The claimant's job cannot involve exposure to unprotected heights, dangerous machinery, uneven surfaces, open bodies of water, or open flames.

R. 15.  Based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Plaintiff could perform relevant past work as a licensed practical nurse ("LPN") and office manager, both as actually performed.  R. 22-23.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 23.  Accordingly, the ALJ concluded Plaintiff was not disabled through the date of decision.

**III.    Issue**

Plaintiff raises one point of error in her challenge to the denial of benefits: that the ALJ's consistency analysis was flawed.  ECF No. 15.

### IV. Analysis – ALJ's Consistency Analysis Was Not Supported by Substantial Evidence and Was Legally Erroneous

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3).[1]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the

---

[1] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. R. 16. In support of this finding related to Plaintiff's headaches, the ALJ cited an April 2021 physical examination following a minor motor vehicle accident, which showed Plaintiff's musculoskeletal system and neck had a normal range of motion and that her sensation and motor function were intact. R. 16 (citing R. 1836-1841). Earlier in the decision at step two, the ALJ noted that, at that same visit, Plaintiff denied headaches, and examination showed Plaintiff was not in acute distress and had no cranial nerve deficit. R. 15 (citing 1836-1841). In discussing Plaintiff's headaches at step two, the ALJ further pointed to a January 2017 examination of Plaintiff's head, which revealed she was normocephalic and atraumatic despite complaints of head congestion. R. 14 (citing R. 1055). The ALJ also noted that these findings were confirmed at a May 2017 physical examination. *Id.* (citing R. 1137). Additionally, the ALJ pointed to two ultrasounds of Plaintiff's head and neck soft tissue in October and November 2017, which revealed unremarkable sonography of the right face, no abscess or drainable fluid collection, and a normal size node right submandibular triangle. R. 15 (citing R. 885). The ALJ noted that, in October 2017, Plaintiff rated her headache pain as a "2-3 out of ten" following completion of physical therapy. *Id.* (citing R. 1416). In May 2019, Plaintiff presented in no acute distress, and examination revealed her pupils were equal, round, and reactive to light, and she had no cranial nerve defect. *Id.* (citing R. 1743-1746). Later in May 2019, examination revealed a supple neck, normal range of motion to all extremities, normal gait, no focal neurological defects, and normal

range of motion to her musculoskeletal system. *Id.* (citing R. 1752-1758). Based on these records, the ALJ concluded that Plaintiff's alleged tension headaches and migraines had no more than a minimal effect on her ability to work and were not severe. R. 15.

Plaintiff alleges the ALJ's consistency analysis pertaining to her headaches was improper because (1) the ALJ failed to justify his dismissal of the severity of Plaintiff's headache symptoms and failed to acknowledge supportive medical evidence, and (2) the ALJ relied upon mischaracterizations of the evidence in assessing Plaintiff's headaches. The Court accepts Plaintiff's arguments and finds that the ALJ's consistency analysis was unsupported by substantial evidence, and that the ALJ mischaracterized the evidence regarding Plaintiff's headaches.

First, Plaintiff argues that the ALJ's cited records related to headaches are not, in fact, inconsistent with her headache symptoms. Specifically, Plaintiff contends that the record citations relied on by the ALJ in his consistency and step-two analysis, which showed normal sensation and motor function, no acute distress, normocephalic and atraumatic head, and normal pupils, are entirely unrelated to whether she experienced disabling headaches. By contrast, at her two hearings, Plaintiff testified she experienced "major headaches" (R. 65), "headaches constantly" from eye strain and other causes (R. 65), bad migraines "if I try to read or strain my eyes" (R. 67), "bad headaches" that caused her to "lay around all day" and lose sleep at night (R. 68), neck pain that caused her to have a "bad headache" (R. 101), migraine headaches "once or twice a week" that she had to "sleep . . . off," tension headaches "two to three times a week" that she could sometimes alleviate with sleep and hot showers, and regular headaches "most days" (R. 103-104). Plaintiff additionally points to records supporting the frequency and severity of her headache symptoms, namely, (1) Plaintiff reported headache at the base of her skull to emergency care providers following a motor vehicle accident in February 2016 (R. 606); (2) Plaintiff reported "base of head pain to base of neck pain that radiates to her left scapula and bra line/lower back

7

pain" to her care provider in May 2016 (R. 583), (3) she reported increased headaches and neck pain to her physical therapy provider following a motor vehicle accident in February 2021 (R. 1887); and (4) Plaintiff was diagnosed with "spinal headaches" and she reported "headaches very often" to her physical therapy provider in March 2021 (R. 1899). Plaintiff argues that, had the ALJ credited her allegations regarding the frequency and severity of her headaches, the ALJ would have found her disabled, because the VE at the second hearing testified that an individual who had to miss two to three days of work per month for headaches or other reasons would be unable to sustain competitive work. R. 108.

After careful review of the records relied on by the ALJ to discredit Plaintiff's headache pain, the Court agrees with Plaintiff that the ALJ's citations are not inconsistent with her testimony regarding headaches. The Court is unpersuaded that a normal head examination or normal physical findings indicate that Plaintiff did not suffer headaches or that they were not intense or frequent. For example, the ALJ noted Plaintiff was normocephalic and atraumatic, and ultrasounds revealed no abscess or drainable fluid collection in the face. R. 14-15. But the absence of an observable head injury or swelling does not equate to the absence of a headache. Plaintiff alleges frequent, debilitating headaches, and she points to medical records supporting her history of headaches following two motor vehicle accidents. Although the ALJ is not required to discuss every piece of evidence in the record, he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ (citation omitted). Here, the ALJ apparently rejected Plaintiff's subjective complaints of headache pain by citation to records that are not probative regarding headaches, while also failing to address probative evidence supporting her headache pain.

In her response brief, the Commissioner does not attempt to address the ALJ's discussion of Plaintiff's headaches, relying instead on the ALJ's discussion elsewhere of her overall

8

complaints of neck pain and physical trauma as substantial evidence supporting the ALJ's consistency findings. While the ALJ discussed Plaintiff's motor vehicle accidents and her history of neck pain, he failed to point to records that counter Plaintiff's complaints of headaches. *See* R. 14-17. Given the disconnect between the ALJ's discussion of headaches and Plaintiff's allegations, the Court concludes the ALJ's consistency findings are not "closely and affirmatively linked to substantial evidence" but rather amount to a "conclusion in the guise of findings." *Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017) (quoting *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013)) (remanding where "evidence does not actually support discrediting [claimant's] complaints of pain and the limiting effects of his conditions"). *See* SSR 16-3p, 2017 WL 5180304, at *10 (explaining that an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms").

Second, the Court accepts Plaintiff's argument that the ALJ mischaracterized the record regarding the severity of Plaintiff's alleged headaches, which rendered his consistency findings unsupported by substantial evidence. The ALJ may not mischaracterize or downplay the evidence to support her findings. *See Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987). Here, in finding Plaintiff's headaches non-severe, the ALJ cited an October 2021 physical therapy treatment note. R. 15 (citing R. 1416). At that visit, Plaintiff rated her headache pain following therapy at a 2-3 out of ten. R. 1416. While the ALJ cited this portion of the record correctly, the ALJ failed to note that Plaintiff stated at that same visit that "overall neck pain [is] a 6 or 7 out of 10 after therapy treatments as does fairly well and will range from 1-2 out of 10 however the neck pain headaches eventually come back after a day or so," and Plaintiff reported she had "a bad headache for the last day 7 out of 10 in her head." R. 1415.

9

The ALJ also cited an April 2021 emergency care visit following a motor vehicle accident, at which she "denied headaches." R. 15 (citing R. 1839). The ALJ's citation here is also misleading, because Plaintiff also reported "pain at the base of her skull [that] radiates up the left side of her head" at that same visit. R. 1837. A physical therapy note from the following day also noted that Plaintiff had experienced increased headaches and neck pain since her accident and could not sleep the previous night due to neck pain and headaches. R. 1834. The Court therefore agrees with Plaintiff that the ALJ's citations are misleading and indicative of "cherry-picking" of evidence regarding headaches. The Commissioner does not attempt in her response brief to explain or justify the ALJ's selective citation of these records.

The Court finds the ALJ's discussion of the severity of Plaintiff's headaches is not supported by substantial evidence and does not satisfy SSR 16-3p, as he cited irrelevant findings in support of his conclusion, ignored probative evidence in this record supporting the severity of her headaches, and selectively cited records to support his conclusion. The ALJ's failure to discuss the less favorable portions of the cited records demonstrates he engaged in impermissible "picking and choosing among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (cleaned up). *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (finding reversible error where ALJ "passed over significant probative record evidence"). While not conclusive, these records are significantly probative and supportive of Plaintiff's allegations regarding the severity and frequency of her headaches, and the ALJ committed reversible error in failing to address them fully. The error is harmful, because the ALJ may have found Plaintiff disabled if he had credited the severity and frequency of her headaches.

V.  **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 28th day of September, 2023.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**